Good morning, Your Honors. May it please the Court, Nathan Zaslow on behalf of the petitioner Ricardo Quele. In this case, the petitioner witnessed his friend get murdered by a violent gang when he was a 19-year-old student in El Salvador. Excuse me just a minute. Oh, sorry. I've got a different sheet here. The sheet I've got here says Oboro first, but in fact it's Quele-Navarro. Which case are you on? Ian Quele-Navarro. Ian Quele-Navarro. Yeah, okay. I better make sure I've got the right case. Okay, so it's Quele-Navarro? Right. I'm sorry, I didn't hear you when you called the case. Luckily, Judge Wynn's on the phone. Okay. If you could start over again so I can get my head around this case properly. Thank you. No problem. So may it please the Court, I'm Nathan Zaslow on behalf of the petitioner Ricardo Quele. Okay. In this case, the petitioner witnessed his friend violently murdered when he was a 19-year-old student in El Salvador. His friend was leaving a bookstore, and the petitioner actually saw the witness, saw the murderers, he saw their face, and he was clearly identified by this gang. Subsequently, this gang, which he described as a narco gang, threatened him with death. In fact, they pursued and intimidated him and his family members to the point that he had to leave his town and then El Salvador. It's documented in the record that his family members were continually harassed for years, even after he left the country. Now, the IJ said that this case was nothing more than a criminal matter, and this is a relatively common reason that an asylum case might get denied. There's a lot of crime in the world, and asylum can't be for everyone who's the victim of a crime. The judge said that the asylum laws did not provide protection in this context. What's the nexus to a protected ground that you're relying on? Is it imputed political opinion? Yeah, there's two, imputed political opinion and the social group. The social group is witnesses to gang violence who have been threatened, and I can take each of those at its own turn. So let's start with the imputed political opinion. What evidence is there in the record that he was persecuted on that ground versus being targeted because the gang didn't want him to report the crime? Okay. Well, I would argue that in this case, this would be a mixed motive case, where obviously part of it is they don't want the crime reported. When we look at the imputed political opinion, I would argue that these gangs, you have to look at the historical context of the gang movement in El Salvador. The background documents show that these gangs actually have their roots from the guerrilla movement. Some of their founders were in the guerrilla movement. So the aftermath of the Salvadoran Civil War created this basic vacuum. The country is probably more dangerous now than during the Civil War, but the gang violence has replaced the violence from the guerrilla movement. When there's a guerrilla movement that was in the Cold War context of Marxism versus a state that opposed Marxism, the guerrillas view themselves as the progeny of this. I'm sorry. The gangs view themselves as the progeny of this guerrilla movement. They consider themselves allied with the FMLN, which was the party associated with the guerrillas. Now, and I'm taking a while. I'm just trying to lace my foundation for the answer to your question. The U.S. Agency for International Development describes gangs as taking on roles normally reserved for the state, such as extorting taxes, exercising their own justice system, and sanctioning citizens who do not obey. So that's the U.S. government. That's not a witness from the petitioner. In addition, the DHS's own submission from the State Department describes virtual fiefdoms which these gangs have created. And that same report also describes them collecting war taxes. So war taxes goes to this idea that the gangs view themselves as the progeny of this. That's the question you're supposed to be addressing. Do you know what it is? The evidence of an imputed political opinion. How does that relate to this petition? Okay. Well, I would say that it can be inferred that the constant harassment and the political nature of these gangs, which view themselves as some type of parallel government, shows that someone who opposes them opposes their rule in a sense. Their parallel government, their rule, their setting up of fiefdoms in the country. I think you said earlier that this was a mixed motive case. Right. Right? So what's the other part? What's the other motive? Well, I mean, the personal motive could be they don't want people to go around trying to get them prosecuted. All right. So if there's a mixed motive and that motive is not a protective ground, under the Real ID Act, what does the showing have to be? I believe it's that one central reason was a protected ground. And not only that, but not only that, persecution on account of a protected ground was a central reason, but under the case law and under the statute, that has to be a compelling reason. Right? In other words, it's not just a possible or rational reason. It has to be compelling. Now, don't you think the personal motive is just as compelling as the political motive? Well, I would think the political motive is more compelling in this case, only because they don't, these gangs don't seem to be content for him having disappeared for years and years. They continue to pursue his family. I think that there's a strong inference there that why would they keep looking for him? Why would they look for people that end up killed or beaten right after they either defend him? I think the central reason law is, under the Real ID Act, it has to be a central reason, not the central reason. And it does not have to be more compelling than some other reason. It's possible under the law for there to be several central reasons in the way the statute uses the term central. Is that right? And the statutory article is a central reason, not the. Right. Yeah. Thank you, Judge. Well, you seem to be relying on a general argument that because the gangs, in essence, have set up a parallel government, anybody who is targeted by the gang is therefore being targeted based on computed political opinion. Is that your argument? I wouldn't say everyone that's targeted. I'd say everyone that's really hunted down for years. I think they wreak a lot of havoc in the country. There's a lot of petty violence, even more than just petty. But I think there's something in common that his associates and his family members, when they're victims of either attacks or threats, that it's always in the context, at least in what we submitted, it's in the context of where is Ricardo, where is he, he's going to follow. Well, there's no question that there's mistreatment. It's a nexus issue that we're struggling with or that I'm struggling with. The IJ and the BIA found that this persecution was not on account of a protected ground. So I'm trying to explore your argument on what is the evidence that would support that nexus. What triggered the persecution in this case? And what triggered the persecution in this particular case was the fact that he witnessed a crime, and the gang didn't want him to report it. Was there any other evidence that demonstrates that the anti-gang opinions he held was what triggered the persecution in this case? Anything beyond the fact that he just witnessed this crime? I guess it would be the fact that he went into hiding, that he avoided them. You know, it's uphill work, I think, given our case law, to try to argue that it's a protected ground, that he opposes gangs. I mean, we've got some case law that I think has not yet been overruled on Bonk that says mere opposition to gangs is not a protected ground. In fact, I think Judge Shima wrote one of the opinions, and I was on the panel with him. What helped me with social group and the possible relevance of Enricus Rivas, where the court says with respect to social groups, there is a cognizable social group, those who are willing to testify or have testified against gangs. How does that play into this case? Right. So, yeah, thank you for that. Or maybe I shouldn't say are willing. It may be that Enricus Rivas says have testified. Maybe the stretch would be might be willing to would be the stretch to get to your case. Right. Right. So in Enricus, it was somewhat of a similar circumstance. A woman essentially witnessed her father get murdered. And in her case, she did go to the authorities and she did testify. So the court identified the protected group under social ground as a person who testified in a criminal trial against a gang member. Now, I guess the key issues there that the Ombak decision made was that the social visibility inquiry cannot require on-site visibility. So that's important in this case. I'm sorry. Tell me again. What is the group that you're contending that the petitioner belongs to? Okay. Our group would be witnesses to gang violence in El Salvador who have been threatened. So I guess the main difference is he was a witness and never testified. But the fact that the group includes people who were threatened means that he was threatened because he was identified by the group. He was identified by his persecutors. So I think that's the key similarity between Enricus Rivas' group. In there, the person testified in open court, so they're clearly identified. In this case, he was identified because they were eyeball to eyeball with the murderers and they clearly identified him for years. Is there evidence in the record from which we can conclude that he would be willing to testify? And I understand the gang might be afraid that he might. Is there evidence in the record from which we conclude that he would if the opportunity arose? I don't know that that was part of the record. He was so frightened and he had such a lack of trust for the authorities that he thought he'd be putting himself in jeopardy if he sought protection. Although there's nothing which might show he wouldn't be willing to testify. One really important point on the Enricus case is the court suggested that social visibility may be demonstrated by looking to perception of the persecutors. So here, whether or not he was willing to testify or not, they know he was a witness. They perceived him as a witness. In the Enricus case, they knew she was a witness. They obviously perceived her as a witness. And I think it's a very similar group, and I think based on Enricus Rivas, that this court could find it's a cognizable group. Let me make sure I understand your argument with regard to the group. Your argument isn't that he belongs to a group of individuals who witnessed gang violence, but rather it's individuals who witnessed gang violence and were threatened. Did I understand that correctly? Right. So once you're threatened, then you belong to this particular group? Right. I mean, that's the way it was worded initially. I mean, threatened could also mean essentially identified by the group. I mean, threatened, you necessarily have been identified. Otherwise, they're not going to threaten you. So I think the relevance to Enricus would be witnesses who are identified. And that's essentially, if you strip it away, that's essentially. Or you could just say they're witnesses, because if they're not identified, they're not witnesses, are they? Well, I. Nobody knows they're witnesses. In other words, this is a very, I mean, the parameters of this group keep shifting. Right. Well, in matter of CA, when the issue was informants in Colombia, the Cali drug cartel, even the BIA said, well, the problem here is you could be an informant, but no one knows you are. So the big distinction that Enrique Rivas, and Enrique Rivas discussed matter of CA, they said the big distinction here is, well, they're perceived by society and the persecutors. So in here, he's completely, he's surely perceived by the persecutors. That's why they're threatening him. So I think that's, in my view, that would be the reason why this would be on par with the social group and Enrique's. And I would just note that on August 13th, I put this in my 28J letter, in Cordoba, Beholder, I believe it was Judge Reinhart, authored a decision where members, the question, I believe it was Guatemalan landowners, whether they were a social group. He remanded based on Enrique's Rivas because he thought that would clearly change the analysis by the board. So even if this court can't get to the point where they're ready to say this is just like Enrique's Rivas, I think in a minimum it could be remanded to the board. Okay. You've saved, I'm sorry. Please. I see your 28J letter, but let me ask you, what was the basis or the reason in Cordoba for remanding? Because what was not apparent from the earlier BIA decision? It was the entire analysis as to social visibility. The social visibility may be demonstrated by looking to perceptions of the community in general and the persecutor. And one important point, I know I'm about to run out of time, is that... The remand issue in Cordoba was the social visibility? Right. Was... How does that relate to this case? Social visibility is an issue here? Yes. It was, yeah, I briefed that here. And I would just note that Enrique's Rivas specifically overruled Santos Lemos, Soriano, and Ramos Lopez to some degree based on the social visibility, based on... On that factor. Yeah, yeah, on that factor. And in page 20 of the respondent's brief, Santos Lemos is cited by the respondent in page 20 as foreclosing the arguments of social group in this case. And that's specifically now no longer good law with respect to some of the key issues on social group. Also, the Soriano case at page 11 of the respondent's brief, that was cited by the board in their May 2010 decision. That case has been overruled. That was cited by the board as a grounds that there's no social group. Furthermore, Ramos Lopez is no longer good law with respect to these social group issues. That was also cited by the board's initial decision of July 2009. So at least three cases cited by the government have been overruled with respect to this issue. Okay. Let's hear from the government. We've taken you over, but we will give you a chance to respond. Okay. May it please the Court, my name is Elizabeth Curlin, and I represent the United States Attorney General, who's the respondent in this case. Your Honors, substantial evidence supports the agency's determination that there is no nexus between the gang's interest in Petitioner and a protected ground, which is based on him having seen the gang's interest in Petitioner. This determination by the board, that Petitioner failed to establish a protected ground, was or will be one central reason for the gang's continued interest in him alone, is sufficient for the Court to deny the petition for review. The gang's actions in this case constitute criminal activity that does not amount to persecution on account of a political opinion or membership in a cognizable particular social group. Tell me what the social group and how we should view this case in relation to Enriquez-Rivas. I think that in this case, Your Honor, the facts are distinguishable. Aside from the lack of a nexus, there is no nexus. You just jumped to the conclusion. No, this is the nexus question I want you to address. Okay. So with regards to the ‑‑ in Enriquez-Rivas, the Court recognized that individuals who testify and serve as a witness in open court may constitute a particular social group because they may meet the social visibility and particularity requirements. As opposed to this case, the individual in this case has refused to serve as a witness. Just because he saw the gang commit a crime, that is distinct and separate. Do we know that he's refused or do we know that he's afraid to be a witness? That ‑‑ his fear may be a motive, but his actions indicate that he refused to. Tell me the evidence you have that he has refused. According to his testimony, he left the scene of the crime without making a report shortly after he saw the gang leave, drive away. Then there is some indication, according to his testimony, that he came to the attention of the police and that they asked him to serve to make a report against the individual because they had arrested someone that they suspected of committing that crime. But he refused to serve because he was afraid. Now, his fear may be a motivation, but that doesn't take away from the fact that he is ‑‑ he's trying to claim membership in this group, but he actually refuses to be part of this group. And he's saying that his group of potential witnesses, which can constitute a particular social group under Henriquez-Rivas, but the court in Henriquez-Rivas placed ‑‑ there was much emphasis on the court, according to the court, in the fact that individuals who are part of groups that they ‑‑ that can constitute a particular social group do so because they've taken some action. Whether that is a covert action of being a government informant or whether they testify in open court, as Henriquez-Rivas did. Because according to the court in Henriquez-Rivas, those individuals have met the social visibility and particularity requirements that the board recognized in matter C.A. So in your view, then, if he had taken some action indicating a desire to go after these guys, that would come within Henriquez-Rivas? That may possibly, Your Honor. Why do you say may possibly? Because the question still remains. Well, the question still remains whether ‑‑ so in Henriquez-Rivas, the particular social group was the social group, but distinctly it was defined as witnesses who testify in open court. Now, that decision left open the possibility that individuals who are behind ‑‑ who testify behind the screen or are not known, that is questionable. Or take some of their actions to try and bring these people to justice? Exactly, Your Honor. There is the possibility, but it was not the group that was at issue in Henriquez-Rivas in which this court specifically recognized. I got you. And, of course, you can say the same thing about this case. That is to say, I think it would, in my view at least, would be fair to say that if we were to hold there's a social group here of witnesses to crime who are targeted by the gang because they are witnesses, but who are also witnesses. And they are afraid to do anything. That would seem to me to be an extension of Henriquez-Rivas, but not so far away from it as to be seen as totally unrelated. But it does seem to me to be an extension. I don't believe it is an extension, Your Honor, because before ‑‑ Do you mean it's already within Henriquez-Rivas? I think before we jump to that step, we need to first take a look at the term witness. I think the term witness means a very specific thing in Henriquez-Rivas, which is someone who has not only seen a crime, but taken an action in order to make themselves a witness. That's distinct. Well, you know, that's not the ordinary use of the term when you say I was an eyewitness to a crime. What that means is I saw it. Now, I was a witness who testified, meaning I was a witness who testified. But the universal use of the word witness includes I saw it happen. Your Honor, I think the difference is you can still call someone, someone who sees a crime, happen. They don't ‑‑ I don't believe that they necessarily makes them a witness in the sense that we ‑‑ in the sense that we identify them automatically as that. We ‑‑ if someone sees a crime, their role is more of a bystander. An individual could be walking along the street and see someone do something. That doesn't necessarily mean that they are a witness, because if they walk away and they refuse to serve as that, then that takes away from their role as a witness. I see witness ‑‑ I take your point. As a matter of just ordinary English vocabulary, we refer to people who see things as witness, but we also refer to people who testify as witnesses. And there clearly is a distinction between someone who sees something and then is that sense of witness and then walks away, and someone who sees something and testifies in court and is that ‑‑ and is in that other sense of witness. So I'm willing to apply the word witness to both people, but I clearly see a distinction that you're trying to draw. And I think, Your Honor, that also carries into the whole ‑‑ the two factors that were at play in Henrique's Rubis, which was the social visibility and the fact that he was a witness. And that in using the witness in the sense that ‑‑ of someone who is taking an affirmative action of some sort, it makes it more viable as a claim to understand how society could perceive that group as socially visible and how that group can also be defined within the parameters of the definition of witness. So I'm willing to apply the word witness to both people, but I clearly see a distinction that you're trying to draw. And I think, Your Honor, that also carries into the whole whole issue of social visibility and the fact that he was a witness. And that in using the witness in the sense that someone who is taking an affirmative action of some sort, it makes it more viable as a claim to understand how society could perceive that group as socially visible and how that group can also be defined within the parameters of the definition of witness. I think the board ‑‑ the board in ‑‑ the finding of the board in the decision of the immigration judge, I think in this case, focused mostly on the nexus issue. Even assuming this is a proper social group, there's no nexus between what happened and his membership in that group. Isn't that the basis of the BIA decision? I don't recognize the ‑‑ I don't read the board's decision as going so far as to say that. I think the board ‑‑ the board focused on the nexus issue and also in addition to that, recognized that he has not established that he's a member of a cognizable particular social group. But the emphasis was more on nexus. Wait a minute. So the board says he doesn't belong to a recognizable ‑‑ recognized or recognizable group? No, the board observed that he had not established that he was part of a cognizable particular social group. Right. Yes, Your Honor. So then that's a fair ‑‑ fair ground of appeal, right? That he is a member of a group, but I don't see it in the opinion. It is in the board's decision of July 2009. What's that, the reconsideration? No, Your Honor. There are two ‑‑ with regards to the nexus and particular social group, the two decisions at play are the July 2009, which is the dismissal of his underlying appeal. And on page two of the board's decision, they discuss ‑‑ the focus is mostly on nexus, but there is also the recognition that he has not established a membership in a cognizable particular social group. Point out to me where they say something like that. On page two? Yes, Your Honor. Go ahead. So the court ‑‑ so the paragraph ‑‑ The carryover paragraph on top. Yes, Your Honor. I apologize. But I don't see them addressing this, you know, requirements of a group or, you know, group membership issue. I'm sorry, Your Honor. It's actually July 2009. It's actually on page one. So the second paragraph? Page one, second paragraph. Go ahead. Yes. So the court has made several cases for the proposition of lack of nexus as well as particular social group. As well as what constitutes a social group? Yes, Your Honor. So that's ‑‑ in your opinion, that's a fair enough analysis that you could say the board reached and decided that question. Yes, Your Honor. But again, I would emphasize that there's ‑‑ the main issue in this case and what's at play is that as the immigration judge recognized in her decision, nexus was the real problem, that she ‑‑ when in reviewing the evidence, nexus was the one ‑‑ was the main factor that the agency found was lacking. And that's ‑‑ and in that way, most of ‑‑ that's the reason why most of the discussion centered on it. And that is a determinative ground in reading the agency's decision and looking at it under the facts of this case. The compelling ‑‑ there's compelling evidence indicating that that is such a determinative ground that that alone is enough to determine whether or not there's a nexus. Thank you. We have, Your Honor, that has been something that we have affirmatively reached out to ICE regarding petitioner's case and petitioner's counsel, and I had talked about it. Unfortunately, at the time that ICE had determined that this individual was not a candidate for PD because there were some background criminal factors that called into question whether he was a low-priority case. To follow up on Judge Nguyen's question, has the government or have both of you considered the possibility of mediation? We had not discussed that, Your Honor. But, of course, if the court finds that that is a ‑‑ that is an option, then ‑‑ Well, I'm also wondering about whether you have a strong position or a position at all on the question raised by the suggestion at the end of the argument just preceded by your adversary as to whether we remand the petitioner's case to a remand for consideration in light of Enriquez-Rivas. You might reject the word extension. I think I'm giving away a lot to the government to say this would be an extension of ‑‑ I don't think this case is on all fours with Enriquez-Rivas, but the board might want an opportunity to consider whether it would be willing to read it as to encompass this kind of case. Would you object to a remand for consideration in light of that case? With this case, we believe that the nexus determination of the agency is so determinative and that there is such compelling evidence indicating that, that it's not ‑‑ Well, of course it's determinative. I mean, that's why I would be tempted to remand to see whether the nexus is a different analysis now that we have Enriquez-Rivas on the books. But, Your Honor, I think what I'm trying to get at is that because nexus is such ‑‑ there's so much compelling evidence on that, that ground alone is enough, is dispositive of this case. You know, I don't think you're taking my point. I totally agree with you. We have a lot of evidence. And the evidence shows that he witnessed a murder, that he is afraid to testify, that the gang is after him because he witnessed a murder. And the question is, I mean, I don't think anybody is disputing that that's what the evidence shows. And the question is whether or not the rationale that underlies Enriquez-Rivas can permissibly extend to a case not only to someone who has testified, but someone who is afraid to testify because he is an eyewitness as to something that would warrant testimony were he not so afraid. I mean, it's not a question of compelling evidence. We've got lots of evidence. The question is whether on this evidence Enriquez-Rivas lies. The problem with that is that when the board made its decision regarding the lack of a cognizable particular social group, there's no indication from its decision that it relied on an incorrect reading of the social visibility factor. It relied on cases that we have explicitly overruled in Enriquez-Rivas. It relied on those cases, but Enriquez-Rivas didn't explicitly overrule. With the exception of Soriano, it did not explicitly overrule those cases. It overruled them to the extent that any of them suggested that an on-site visibility was used as the determination of social visibility. And, in fact, the board's decision cites to matter of SEG, which the court discusses in Enriquez-Rivas, with approval as, and the SEG. So what you're saying is that even viewed through the perspective of the persecutors, there would be no social visibility, and particularly under the well-established facts of this case. Yes, Your Honor, but also whether it is the main issue is viewed under perspective of society. And that's the question of whether that constitutes the persecutor, it should be mainly the persecutor or mainly society. That is not at play in this decision. So I see that I'm out of time. May I close? So in conclusion, Petitioner has failed to show that the evidence of record compels the sole conclusion that the gang's interest in him is on account of a protected ground for asylum purposes. Thank you. And now we've taken the government over time, we took you over time, why don't we put a minute and a half on the clock, see what you have to say. Thank you, Judge. I would just note that in the administrative record at page 327, there's testimony to the fact that when the police investigation started, he had already fled to his parents, sorry, to his grandparents' house in a different town, and he was afraid that he would be killed due to the infiltration by the gangs and the police often. That's AR at 327. So I'm not sure, tell me what the purpose of your telling me this is. Oh, there is an issue of whether or not, you had asked if he refused to testify, if he refused to cooperate with authorities. And it was more just he was afraid, he just wanted, he just left. And I guess the way I frame this is, if in the Enriquez case, if she had fled before she testified because she was so afraid, would the court not have granted her, not have found that she was a cognizable group? And I would just say that, I would urge the court to look at from the view, from the view that, the quote directly from the case is, social visibility may be demonstrated by looking to the perception of the persecutors. And quotation, this is highly relevant to or even potentially dispositive of the question of social visibility. So if we look at perception of the persecutors, they perceive him as a witness either before or after a witness might testify. So I don't personally see the distinction between someone who did testify versus someone who fled before they testified. They're both been identified. Okay. And yeah, that's all I have. Thank you.
judges: Tashima, Fletcher, Nguyen